| | | |
|---|---|---|
| SAMUEL NORMAN | ) | |
| | ) | |
| v. | ) | 1:07-cv-231\1:06-cr-35 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM

Samuel Norman ("Norman"), has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 33).[1] Norman contends he is actually innocent of the 18 U.S.C. § 924(c) conviction for possession of firearms in furtherance of drug trafficking. Norman contends that because counsel advised him to plead guilty to a charge of which he is innocent, he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Furthermore, according to Norman, due to counsel's deficient performance he entered an involuntary guilty plea to the 924(c) charge. The United States opposes the motion (Court File No.39).

After reviewing the record, the Court concludes it conclusively shows that an evidentiary hearing is not necessary, and both Norman's § 2255 motion and his motion to grant him the relief he has requested will be **DENIED** for the reasons which follow (Criminal Court File Nos. 33 & 42).

### I. 28 U.S.C. § 2255 - Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete

miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Norman bears the burden of pleading and articulating sufficient facts to state a viable claim for post-conviction relief under 28 U.S.C. § 2255. Mere vague conclusions, which are not substantiated by allegations of specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thus failing to raise a viable cognizable claim under § 2255. *Green v. Wingo*, 454 F.2d at 53; *O'Malley v. United States*, 285 F.2d at 735; *Ryals v. United States*, 2009 WL 595984, *5 (E.D. Tenn. March 6, 2009).

## II.   Procedural and Factual Background

The recitation of the background of this case is taken from the Presentence Investigation Report ("PSI"):

1.      On April 25, 2006, a grand jury sitting for the Eastern District of Tennessee, Chattanooga Division, filed a four-count Indictment charging Samuel Norman as the only defendant. Count One charges that in or about October 2004 until on or about April 5, 2005, Samuel Norman and others conspired to distribute and possess five (5) grams or more of methamphetamine, in violation of 21 U.S.C. § 846 and § 841(a)(1) and (b)(1)(B).

2.      Count Two charges that on or about April 5, 2005, Samuel Norman possessed with the intent to distribute five (5) grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

3.      Count Three charges that on or about April 5, 2005, Samuel Norman possessed with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).

4.      Count Four charges that on or about April 5, 2005, Samuel Norman

possessed firearms in furtherance of drug trafficking crimes as charged in Counts One, Two and Three of the Indictment, in violation of 18 U.S.C. § 924(c).

5.      Samuel Norman was arrested by federal authorities on April 27, 2006. He appeared before United States Magistrate Judge Susan K. Lee on April 28, 2006. The defendant pled not guilty to the Indictment and a trial date was scheduled for June 26, 2006, at 9:00 a.m. The defendant received an Own Recognizance bond of $20,000 on May 3, 2006, and was released from custody. Mr. Norman was placed under the supervision of Pretrial Services. The defendant filed a Motion to Suppress Evidence on June 13, 2006. After several hearings were scheduled and rescheduled, the defendant withdrew his Motion to Suppress on July 13, 2006. An Agreed Factual Basis was filed on August 25, 2006. The defendant along with his counsel appeared before Chief United States District Judge Curtis L. Collier on September 12, 2006, and without benefit of a plea agreement, pled guilty to Counts Two and Four of the Indictment. The Court granted the government's motion to dismiss Counts One and Three of the Indictment during the defendant's re-arraignment. Sentencing was scheduled for January 11, 2007, at 9:00 a.m. Due to the Mandatory Detention requirement associated with the counts Mr. Norman pled guilty to, he was placed into custody after entering his guilty plea. On October 11, 2006, the defendant's case was transferred from Judge Collier to United States District Judge R. Allan Edgar.

. . .

7.      On April 5, 2005, a Polk County Sheriff's Department officer stopped a vehicle operated by an individual identified as Jack Swallows for driving with a suspended license. Officers were familiar with Mr. Swallows and knew his license to be suspended. The officers observed Mr. Swallows throw a glass pipe from the vehicle. Upon arrest, Mr. Swallows exited the vehicle and officers then observed a handgun on the seat. It was a loaded .22 caliber pistol. Upon further investigation, officers found a baggie of suspected ice methamphetamine in the front left pant pocket of the defendant and a second baggie in his right front pant's pocket. Officers also found a camouflage bag containing $5,000 in cash with a small bag of marijuana attached to one of the cash bundles. Also inside the bag were three bags of marijuana, a bag of crack cocaine, and two packs of rolling papers. Mr. Swallows gave officers consent to search his bedroom, which was located inside Samuel Norman's residence. They found numerous "resale baggies" inside the Mr. Swallows bedroom.

8.      Officers went to the residence of Mr. Norman. Mr. Norman along with two other men came to the door. The defendant gave consent to search his home. Inside Mr. Norman's home, officers found approximately 33.6 grams of actual methamphetamine (laboratory tested with 91.2%, 93.4% and 97.4% purity levels), 268.3 grams of marijuana (laboratory tested), digital scales, baggies, a drug ledger,

two rifles, a shotgun, and a pistol. Mr. Norman's key ring contained a lock box key that matched a lock box found under a coffee table in the living room. Officers also seized the lockbox containing scales, methamphetamine, marijuana and $2,355 in United States currency. In the bedroom, officers found a loaded .357 Magnum, two loaded Winchester 30-30s, and a loaded Springfield 12 gauge shotgun. After waiving his Miranda rights, Mr. Norman made statements to investigators regarding his involvement in selling methamphetamine. He admitted to selling methamphetamine for approximately six months. However, he refused to give information about his sources, customers or amounts.

DRUG AMOUNTS - Samuel Norman

9.     Mr. Norman can be attributed with 33.6 grams of actual ("ice") methamphetamine and 268.3 grams or marijuana. For guideline calculation purposes, the marijuana amount will not be used. This is due to the amount not affecting the calculations. Therefore, Mr. Norman is attributed with 33.6 grams of actual "ice" methamphetamine. ["Ice" is defined in Application Note (C) of § 2D1.1, as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity."] This amount falls within offense level 28 which allows for at least 20 grams, but less than 35 grams of "ice."

(PSI, pp. 3-4).

## III.    Discussion

Initially the Court observes that Norman is under the mistaken belief that in this § 2255 proceeding it is the government's burden to show that he possessed the weapons in furtherance of a drug trafficking crime (Criminal Court File No. 40). Contrary to Norman's suggestion, he must shoulder the burden of showing that he did not possess the weapon in furtherance of a drug trafficking crime in order to carry his burden of demonstrating his actual innocence, denial of effective assistance of counsel, and claim that his guilty plea was involuntary. *See United States v. Frady*, 456 U.S. 152, 170 (1982) (§ 2255 movant has burden of proving his claims).

As the Court understands the claim, Norman is asserting that, because he is actually innocent of the § 924(c) conviction, his plea to that charge was involuntary based on counsel's deficient performance in advising him it was in his best interest to plead guilty. Norman, does not however,

detail trial counsel's explanation of why she recommended he enter a guilty plea. He does not inform the Court of counsel's response when he told her how the guns came into his possession or on what she based her advice to plead guilty to the gun charge.[2] Nevertheless, the Court need not engage in that analysis because, as explained below, Norman has not raise a credible actual innocence claim.

To support his actual innocence claim, Norman contends the firearms were inherited following his father's death; they were not acquired for any specific purpose; they were legally possessed; and the loaded firearms, which were found in his bedroom, were not in close proximity to the methamphetamine, which was stored in a lock box underneath the coffee table in the living room. Therefore, according to Norman, he is actually innocent of the § 924(c) conviction. As explained below, because Norman has not made a credible claim of actual innocence, he has not demonstrated counsel rendered ineffective assistance in advising him to plead guilty to the § 924(c) charge or that guilty plea to that charge was involuntary.

### A. Applicable Law

At the outset the Court notes there is a difference between a "gateway claim" and a "freestanding claim" of actual innocence. *See House v. Bell*, 547 U.S. 518 (2006). To prove actual innocence, a § 2255 movant must demonstrate his factual innocence and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To

---

[2] This failure prevents the Court from determining counsel was ineffective.

demonstrate actual innocence as a gateway to permit a court to reach a defaulted claim, a § 2255 movant is required to present *new evidence* of his innocence that establishes "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubts." *House v. Bell*, 547 U.S. 518, 537 (2006). A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup*, 513 U.S. at 324.

A freestanding claim of actual innocence is an attempt to prove outright innocence. *See House*, 547 U.S. at 554-55; *see also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (recognizing the possibility of a freestanding actual innocence claim). Nevertheless, a freestanding claim of actual innocence has never been explicitly recognized by the Supreme Court. *House*, 547 U.S. at 555 (concluding "that whatever burden a hypothetical freestanding innocence claim would require this petitioner has not satisfied it.). The *House* Court did, however, establish that the standard for any freestanding innocence claim would be higher than the standard for a successful gateway innocence claim. *Id.* ("The sequence of the Court's decisions in *Herrera* and *Schlup* - first leaving unresolved the status of freestanding claims and then establishing the gateway standard -implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*).

In order to demonstrate ineffective assistance of counsel as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a § 2255 movant must prove: (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill*

*v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995), *superseded by statute on other grounds as stated in Dickerson v. Vaughn,* 90 F.3d 87 (3rd Cir. 1996). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 at 56. Therefore, "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not" the advice of competent counsel. *Id*. at 57 (internal quotations marks and citations omitted).

### B.      *Analysis*

The Court makes two observations at the outset: (1) Norman entered a guilty plea admitting that he possessed several loaded firearms in his bedroom in the house where he also had his drugs, which he stashed in the living room; thus, his guilty plea was an admission that these firearms were possessed in furtherance of his drug trafficking activities, and (2) Norman does not claim, that but for counsel's advice, he would have pleaded not guilty and proceeded to trial. Norman does claim, however, that he is actually innocent of possessing the loaded firearms in furtherance of his drug

activity because the firearms were: (1) inherited, (2) legally possessed apart from this drug trafficking activities, (3) not acquired for any specific purpose, and (4) found in his bedroom rather than in the living room in close proximity to the methamphetamine, which was stored in a lock box underneath the coffee table in the living room.[3]

Norman is under the mistaken belief that because the loaded firearms were found in his bedroom rather than in the living room where he kept his drugs, and because the firearms were inherited and not acquired "for any specific purpose," the guns were legally possessed and not possessed in furtherance of his drug trafficking. As the government points out, it is wholly immaterial that defendant inherited the guns, that he may have legally possessed them apart from his drug trafficking, or that he did not initially acquire them in furtherance of his drug trafficking. These alternative reasons for possessing the firearms do not quality as new reliable evidence and do not demonstrate he is actually innocent of possessing the firearms in furtherance of his drug trafficking crime. Indeed, the evidence that the loaded weapons were located in his bedroom instead of in the living room near the methamphetamine were facts known at the time of his arrest and during his criminal proceedings. Hence, none of these alternative reasons nor the fact the loaded weapons were not in the same room as the drugs constitute new reliable evidence (defined as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that is not presented at trial), as required to demonstrate his claim of innocence is based on factual innocence and not mere legal insufficiency. *See Bousley*, 523 U.S. at 623.

Title 18 U.S.C. § 924(c) prohibits the "possession" of a firearm "in furtherance of" certain

---

[3]  Although Norman is apparently raising a freestanding claim, if he is unable to meet the gateway standard, there is no doubt that he will be unable to meet the freestanding standard.

crimes.  Section 924(c)(1)(A) provides that "any person who during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," is subject to various terms of imprisonment.  The legislative history of the 1998 amendment to the statute "indicates that the amended versions of he statute added the phrase criminalizing possession 'in furtherance of' a drug trafficking crime in order to 'reverse the restrictive effect of the *Bailey* decision.'" *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (quoting H.R. Rep. 105-344, at 6 (1997).

The Sixth Circuit has explicitly held that § 924(c) is "not a specific intent offense[.]" *United States v. Brown*, 915 F.2d 219, 225 (6th Cir. 1990).  In *Brown*, the Sixth Circuit explained that it is only necessary to show a relationship between the gun and the crime as "[t]he statute [§924 (c)] is satisfied with a sturdy, subtle spider's web." With  respect  to the possession of a firearm in furtherance of a drug trafficking offense, the Sixth Circuit requires the government to "show a 'specific nexus between the gun and the crime charged' and that the firearm 'was strategically located so that it is quickly and easily available for use.'" *United States v. Ham*, 628 F.3d 801, 809 (6th Cir. 2011) (quoting *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001).  "Other factors to consider include: (1) 'whether the gun was loaded,' (2) 'the type of weapon,' (3) 'the legality of its possession,' (4) 'the type of drug activity conducted,' and (5) 'the time and circumstances under which the firearm was found.'"*United States v. Ham*, 628 F.3d at 808-09 (quoting *United States v. Mackey*).

For example, the Sixth Circuit has determined that "[a]lthough possession of a firearm in the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as 'to

provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004). In addition, the Sixth Circuit has found that possession of a firearm for one purpose does not foreclose the court from finding that the firearms were also possessed for another purpose, i.e., to facilitate a drug offense. *United States v. Moore*, 239 Fed.Appx. 137, 141 (6th Cir. 2007), *available at* 2007 WL 1804351 (the fact *Moore* collected guns because it was his hobby did not prevent the court from finding he also possessed them to protect or otherwise facilitate a drug transaction).

In the instant case, three loaded weapons, one of which was a .357 Magnum, were located in Norman's bedroom and the drugs were in a lock box in his living room. Had this case gone to trial, a reasonable jury could infer that, based upon this evidence along with Norman's reasons for possessing the guns, at least one of the purposes of the firearms was to protect or facilitate or have the potential of facilitating the drug trafficking offense.[4]

The burden is on Norman to prove his factual innocence and not merely legal insufficiency of the evidence. Assuming for the sake of discussion that all of Norman's assertions are true, that still does not demonstrate his factual innocence as the loaded firearms that were found in his bedroom were easily accessible to him. Based on Sixth Circuit case law, that evidence supports his guilty plea as it reasonably appears that the firearms found loaded in Norman's bedroom were ready to be used to protect the drugs, or otherwise facilitate a drug transaction. Norman has not offered any affirmative evidence to the contrary or any credible evidence to contradict his plea to possessing the firearms in furtherance of a drug trafficking crime. Hence, he has not demonstrated that he is

---

[4] For example, to provide protection to Norman, his drugs, or his money, if the need arose.

actually innocent of the 924(c) conviction.

Importantly, Norman does not deny the guns were loaded and accessible to him to protect his drugs and money, and he does not deny that such is the reason he pleaded guilty to the § 924(c) charge. Instead of presenting new reliable evidence that would establish his factual innocence, Norman merely asserts he had other reasons for possessing the firearms. Thus, because he has not supported his allegation of actual innocence with new reliable evidence, and he has not demonstrated "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," *Schlup,* 513 U.S. at 327, Norman has not met the standard for establishing either a gateway or freestanding innocence claim. Submission of these other reasons for possessing the firearms simply does not provide a sufficient basis to collaterally attack his guilty plea.

Because Norman has failed to establish his actual innocence, he has also failed to show that counsel's advice to plead guilty was deficient or that his guilty plea was involuntary. Accordingly, Norman's claims of actual innocence, ineffective assistance of counsel, and involuntary guilty plea fail, and his § 2255 motion will be **DENIED** (Criminal Court File No. 33).

An appropriate judgment order will enter.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE